IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KEVIN BERNARD JOHNSON (TDCJ No. 1099929), | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:16-cv-2438-M-BN |
| SUSAN HAWK, | § § § | |
| Defendant. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

This *pro se* action under 42 U.S.C. § 1983, filed by Plaintiff Kevin Bernard Johnson, a Texas prisoner, has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Chief Judge Barbara M. G. Lynn. The undersigned issues the following findings of fact, conclusions of law, and recommendation that, for the reasons stated below, the Court should summarily dismiss this action with prejudice.

**Applicable Background**

In 2002, Johnson was convicted of two counts of aggravated robbery, and he received concurrent sentences of 35 years of imprisonment. *See State v. Johnson*, Nos. F01-57079 & F01-57080 (363d Jud. Dist. Ct., Dallas Cnty., Tex.). His convictions and sentences were affirmed on appeal. *See Johnson v. State*, Nos. 05-02-00594-CR & 05-02-00595-CR, 2003 WL 21419046 (Tex. App. – Dallas June 20, 2013, no pet.). And his petitions for state and federal habeas relief have been denied or dismissed. *See*

*Johnson v. Quarterman*, No. 3:07-cv-385-R, 2007 WL 2873783 (N.D. Tex. Oct. 3, 2007).

The sole claim in the current civil rights action is that Johnson's right to "due process was violated by the state[']s refusal to release the biological evidence (namely a knife) for testing (DNA)," which he asserts "deprived [him] of [a] liberty interest in utilizing state procedure." Dkt. No. 3 at 5; *see also* Dkt. No. 4 (asserting that "[t]he State suppressed [DNA] evidence willfully or inadvertently").

Related to this cursory claim, the Court can take notice of a November 19, 2014 order of the 363rd Judicial District Court of Dallas County, Texas, denying Johnson's motion for post-conviction DNA testing. *See State v. Johnson*, Nos. F01-57079 & F01-57080 (363d Jud. Dist. Ct., Dallas Cnty., Tex. Nov. 19, 2014):

> After considering the pleadings of both Kevin Bernard Johnson and the State and any attachments thereto, as well as the legal requirements contained in Chapter 64 of the Texas Code of Criminal Procedure, this Court concludes that Kevin Bernard Johnson is not entitled to post-conviction DNA testing. The Court expressly FINDS that Kevin Bernard Johnson has failed to meet the burden incumbent upon him to be entitled to postconviction DNA testing under Chapter 64 of the Texas Code of Criminal Procedure.
> The Court expressly FINDS that Kevin Bernard Johnson has failed to show that identity was an issue because Kevin Bernard Johnson was identified by an undercover officer who saw Kevin Bernard Johnson and his accomplice commit the charged offenses. The Court FINDS that Kevin Bernard Johnson cannot show any likelihood whatsoever that he would not been convicted if DNA testing could be conducted because of the facts showing that Kevin Bernard Johnson acted as a party with a codefendant/accomplice in the commission of the crimes and because any potential DNA testing of the knife that was recovered would, based on the specific unique facts of the cases, fail to exonerate Kevin Bernard Johnson.
> In accord with and based upon the aforementioned findings, Kevin Bernard Johnson's motion for post-conviction DNA testing is hereby DENIED.

*Id.*; *cf. Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

As to the post-conviction order's finding concerning identity, at Johnson's trial, at which Johnson and his co-defendant, Damien Jackson, were tried jointly, neither defendant's identity was at issue – that is, there was no dispute that it was Johnson and Jackson who confronted the victims. Indeed, the victims, both defendants, and an eyewitness all testified accordingly. And, at trial, testimony conflicted as to which defendant possessed the knife that appears to be the object of Johnson's request for DNA testing. As recounted by the Dallas Court of Appeals,

> Randy Reyes and Martin Munoz were walking back to their car from a club. Munoz was so intoxicated Reyes had to help him walk. When they got to their car, appellant and his co-defendant Damien Jackson asked them for money or change. Munoz heard one of the men say "[L]et's do this." Then the men attacked Reyes and Munoz. Appellant shoved Reyes to the ground, held a knife to Reyes's face, and demanded his wallet. Reyes feared for his life. Appellant searched Reyes's pockets but was unable to find Reyes's wallet. Reyes heard Jackson shout "I got it" before appellant let him go. Meanwhile, Jackson, threw Munoz to the ground. He held Munoz by the neck and grabbed his wallet. Munoz feared Jackson was going to hurt him; he felt that Munoz might possibly kill him. Appellant and Jackson got into a car and began to drive away.
>
> An undercover police officer witnessed the occurrence. When the officer blocked appellant's car with his vehicle, Reyes saw appellant put

something under the car before he ran from the scene. Munoz's wallet was found in the car.

The undercover officer's testimony differed significantly from the testimony of Munoz and Reyes. The officer testified that Jackson (rather than appellant) had displayed a knife against Munoz and that Jackson (rather than appellant) had tried to hide a knife under the car. According to the officer, the lock blade knife found under the car, which had a blade of approximately three inches, could be a deadly weapon. A second police officer, who chased and ultimately caught appellant, agreed. Both appellant and Jackson were arrested.

Appellant and Jackson were tried jointly. Jackson testified during the punishment phase of trial. He claimed he never touched Munoz the night of the offenses and that Munoz fell down on his own. He claimed Munoz dropped his wallet and he took the "opportunity" to steal it. According to Jackson, he and appellant did not know each other before that night. Appellant had agreed to give him a ride home from a club, and he and Jackson were walking to appellant's car when, according to Jackson, they got into a verbal confrontation with Reyes and Munoz. He claimed the verbal confrontation escalated into a physical fight simultaneously for both him and appellant. Jackson claimed he had a pocket knife that fell out when he got out of the car at the police officer's request. He also claimed no one displayed a knife during the confrontations. Jackson testified that neither he nor appellant had an intent to rob, but he acknowledged he took Munoz's money after they "got through wrestling." Jackson admitted he did not know what happened between appellant and Reyes; he stated that they were out of his line of sight. He specifically acknowledged to the trial court that he did not know whether appellant had gone through Reyes's pockets because he did not know what had happened between appellant and Reyes. Nevertheless, he stated that he "just thought [he saw] the guy run and fall and that was it."

Appellant also testified during punishment. He claimed he and Jackson confronted Reyes and Munoz because Munoz was urinating in front of a store. Munoz cursed at appellant and Jackson when they told him to stop urinating. According to appellant, he chased Reyes, tripped him, then let him go and returned to his car when Reyes said that appellant's quarrel was with Munoz, not with him.

*Johnson*, 2003 WL 21419046, at *1-*2.

## Legal Standards

A district court is required to screen a civil action brought by a prisoner – whether he is incarcerated or instead detained prior to trial – seeking relief from a governmental entity or employee. *See* 28 U.S.C. §§ 1915A(a), (c). On initial screening, the Court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, that:

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

*Id.* § 1915A(b). Analogously, under 28 U.S.C. § 1915(e)(2)(B), also applicable here, *see* Dkt. No. 5 (order granting Johnson leave to proceed *in forma pauperis*), a district court may summarily dismiss any complaint filed *in forma pauperis* – not limited to complaints filed by prisoners seeking relief from a governmental entity or employee – for the same reasons.

An action is frivolous if it lacks an arguable basis in either law or fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009) ("A claim may be dismissed as frivolous if it does not have an arguable basis in fact or law."). And a complaint is without an arguable basis in law if it is grounded upon an untenable, discredited, or indisputably meritless legal theory, including alleged violations of a legal interest that clearly does not exist. *See Neitzke*, 490 U.S. at 326-27; *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999).

The Court must "accept all well-pleaded facts as true, viewing them in the light

most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while the Court must accept all of a plaintiff's allegations as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *see also Kinney v. Shannon*, 630 F. App'x 258, 261 (5th Cir. 2015) (per curiam) ("[T]he district court does not have to accept conclusory or

speculative allegations." (citing *Coleman v. Sweetin*, 745 F.3d (5th Cir. 2014); *Gross v. Normand*, 576 F. App'x 318, 319 (5th Cir. 2014) (per curiam))).

Said simply, to survive dismissal under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that a plaintiff contends entitle him to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. \_\_\_\_, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *cf. N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

While a district court generally affords a *pro se* complainant an opportunity to amend before dismissing for failure to state a claim, *see Gregory v. McKennon*, 430 F. App'x 306, 308 (5th Cir. 2011) (per curiam) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)), a court also may dismiss a prisoner's civil rights complaint as frivolous based on the complaint and exhibits alone, *see Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986); *see also Tinsley v. C.I.R.*, 958 F. Supp. 277, 279 (N.D. Tex. 1997) ("District courts are vested with especially broad discretion in making the determination of whether an IFP [*in forma pauperis*] proceeding is frivolous." (quoting *Green*, 788 F.2d at 1119)); *accord Lewis v. Sec'y of Pub. Safety & Corrs.*, 508 F. App'x

341, 344 (5th Cir. 2013) (per curiam).

## Analysis

In the specific context of Johnson's lawsuit, the United States Court of Appeals for the Fifth Circuit has observed that,

> [t]o state a claim under § 1983, a plaintiff must allege that there was a violation of a right secured by the Constitution or laws of the United States and that the deprivation was committed by a person acting under the color of state law. *Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008). While there is no freestanding right for a convicted defendant to obtain evidence for post-conviction DNA testing, such a right may be created by state law. *District Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 67-73 (2009). Texas has created such a right, which is found in Chapter 64 of the Texas Code of Criminal Procedure.

*Harris v. Lykos*, No. 12-20160, 2013 WL 1223837, at *1 (5th Cir. Mar. 27, 2013) (per curiam).

As to the application of Chapter 64,

> [i]n Texas, a convicted person may move for forensic DNA testing of evidence containing biological material. TEX. CODE CRIM. P. ANN. art. 64.01. The trial court may order forensic DNA testing "only" if the court finds that the evidence still exists and is in a condition that makes DNA testing possible, has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect, and identity was or is an issue in the case. TEX. CODE CRIM. P. ANN. art. 64.03(a)(1)(A), (B), (C). Additionally, the movant must establish by a preponderance of the evidence that he would not have been convicted if exculpatory results were obtained through DNA testing. TEX. CODE CRIM. P. ANN. art. 64.03(a)(2)(A).

*Kinney*, 630 F. App'x at 260.

> The constitutional right at issue in the instant case is procedural due process – whether the defendant is unconstitutionally denying [Johnson] his right to post-conviction access to DNA evidence. *See Skinner v.*

> *Switzer*, 562 U.S. 521 (2011) (holding that a post-conviction claim for access to evidence for DNA testing is properly brought under § 1983); *Garcia v. Castillo*, 431 F. App'x 350, 352-53 (5th Cir. 2011) (reviewing claim concerning denial of post-conviction access to DNA evidence brought under § 1983).

*Harris*, 2013 WL 1223837, at *1 (internal citation modified).

But "[f]ederal courts 'may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided.'" *Kinney*, 630 F. App'x at 260 (quoting *Osborne*, 557 U.S. at 69); *accord Harris*, 2013 WL 1223837, at *1.

Here, Johnson merely asserts that the state court's denial of his motion to test the knife was itself a due process violation. *See* Dkt. Nos. 3 & 4. As another judge of this Court has noted, such an assertion "is not enough" to plausibly allege that a plaintiff's right to procedural due process has "been violated by the process available under article 64." *Abdulkadir v. Sadler*, No. 2:14-cv-33, 2014 WL 3530783, at *5 (N.D. Tex. July 16, 2014) ("Plaintiff has presented nothing which would permit this Court to conclude plaintiff's procedural due process rights have been violated by the process available under article 64. Considering that the plaintiff could fully utilize the process enacted by the state legislature, all plaintiff has shown is that his state court motion was denied. That is not enough.").

Furthermore, the Court should dismiss this action with prejudice without affording Johnson leave to amend his complaint as Johnson cannot allege plausible facts to establish a due process violation in connection with the denial of his motion for

DNA testing, because he "cannot meet the statutory requirements for obtaining post-conviction DNA testing" and he therefore "cannot complain of the inadequacy of the State's procedures – namely show that the procedures established by article 64 are 'fundamentally inadequate to vindicate the substantive rights provided.'" *Roughley v. Watkins*, No. 3:14-cv-2637-N-BK, 2014 WL 5313957, at *3 (N.D. Tex. Sept. 22, 2014) (quoting *Osborne*, 557 U.S. at 69), *rec. accepted*, 2014 WL 5313952 (N.D. Tex. Oct. 17, 2014).

As in *Roughley*, here, as set out above, the question of "identity" – "one of the necessary prerequisites to obtain DNA testing," *Kinney*, 630 F. App'x at 261 (citing TEX. CODE CRIM. P. ANN. art. 64.03(a)(1)) – "was not at issue at [Johnson's] trial," *Roughley*, 2014 WL 5313957, at *2 (citing TEX. CODE CRIM. P. ANN. art. 64.03(a)(1)(B)). And Johnson "does not claim that he would not have been convicted if DNA testing had yielded exculpatory results, as [article] 64.03(a)(2)(A) requires." *Id.*; *accord Kinney*, 630 F. App'x at 261; *cf. Elam v. Lykos*, 470 F. App'x 275, 276 (5th Cir. 2012) (per curiam) ("Elam contends that his due process rights were violated by the State's denial of his request for post-conviction DNA testing because the evidence submitted at trial included unreliable and fabricated physical evidence and perjured testimony. Elam's arguments do not establish his due process rights were violated. Any further DNA testing of the evidence from Elam's trial would not be probative on the issue of Elam's guilt or innocence. The judgment of the district court is affirmed. (citations omitted)).

Johnson's current claim is therefore "fatally infirm," and leave to amend would

be futile. *Roughley*, 2014 WL 5313957, at *3.

## Recommendation

The Court should summarily dismiss this action with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 28, 2016

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE